186 Conn. 185 (1982)
JULIA MACKIN ET AL.
v.
WALTER MACKIN ET AL.
Supreme Court of Connecticut.
Argued December 8, 1981.
Decision released February 2, 1982.
SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, JS.
J. Michael Sherb, for the appellants (defendants).
Jackson T. King, Jr., with whom was Mary E. Holzworth, for the appellees (plaintiffs).
PER CURIAM.
This case involves a dispute over a right of way. The plaintiffs claimed an easement by deed. The defendants denied this claim and, by way of counterclaim, asserted that the plaintiffs by erecting fences narrowed and thereby interfered with the defendants' use of the right of way. The trial court found the issues for the plaintiffs on both the complaint and the counterclaim and also awarded the plaintiffs $2500 in damages.
The immediate story begins in 1963. Prior to that year the brothers Nicholas and Walter Mackin each owned an undivided one-half interest in a large tract of land known as the Mackin Farm and located on the west side of Route 201 in the town of Griswold. On May 25, 1963, they exchanged certain acreage of the Mackin Farm as a result of which Nicholas became the owner and occupant of a cottage *186 and property situated on Pachaug Pond. The deed from Walter to Nicholas conveyed approximately twelve acres of land "together with a right of way, in common with others, over and across all rights of way, as the same now exist, on other land of the said Releasor and Releasee, leading to the highway known as Route 201, and to Pachaug Pond, to him, the said Releasee, his heirs and assigns. Subject to such rights of way, as the same now exist, over and across the herein conveyed premises...."
At the time of the conveyance in 1963 a passageway or old farm road was in existence which led from Route 201 in a general westerly direction through property owned jointly by Nicholas and Walter to and through property conveyed to Nicholas and continuing along Pachaug Pond to and through other property owned jointly by Nicholas and Walter. There was also in existence in 1963 a road known as Popple Hill Road or Popple Bridge Road which had been a town road before its abandonment by the town many years prior to 1963. This road was northerly of and generally parallel to the old farm road. In 1963 Popple Bridge Road was an existing and visible roadway although at certain times of the year portions of it became almost impassable so that one using the road had to drive onto adjoining fields to pass by those areas which were difficult to travel. In 1963 and for sometime prior thereto there was another visible roadway on the Mackin Farm which led from the old farm road in a northerly direction to Popple Bridge Road. As of May 25, 1963, the three rights of way known as the old farm road or passageway, the connecting road to Popple Bridge Road and Popple Bridge Road itself were visible and in existence. At the time of the conveyance Walter and Nicholas *187 were engaged in a project of improving the old Popple Bridge Road and by sometime in 1963, Popple Bridge Road was an improved right of way with drainage.
Before and after 1963 the brothers Walter and Nicholas had sold building lots in the vicinity of Pachaug Pond which included a right of way from the lots to Route 201. All of the rights of way in existence in 1963, i.e., the old farm road, the connecting road and Popple Bridge Road, were over lands owned by Walter Mackin and Nicholas Mackin. Subsequent to May of 1963 Nicholas conveyed his interest in the property including his cottage to the plaintiff Julia Mackin, and she, in turn, conveyed a portion of the premises to the plaintiffs John and Dale McNally. The McNallys presently reside in a home built by them on this property. Walter conveyed a portion of his property to Rudolph Mackin and the two of them have been involved in developing the premises and working with each other in that regard.
The two defendants, Walter and Rudolph Mackin, have acted in concert in developing and planning the properties, and relocating and blocking the right of way. In 1974, without Nicholas Mackin's or the plaintiffs' permission, the defendants constructed a new gravel road and bulldozed piles of dirt to block access to a portion of the old farm road after the new gravel road was constructed. The defendants had no intention of blocking the plaintiffs' access to Route 201 when they relocated a portion of the old farm road. They also caused Popple Bridge Road to be closed by placing obstructions on it at various points, so as to prevent the use of that *188 roadway by the plaintiffs and others. At the time of trial, the condition of the blocked-off portion of the old farm road was very poor. It was washed out in a number of places and, in general, at that point, was in worse condition than the so-called relocated right of way. The court, after viewing the premises, was of the opinion that the "passageway" is presently in such a state of disrepair that the cost to the plaintiffs of repairing it would, in relation to the minor inconvenience caused by the obstruction, be excessive and that damages in the amount of $2500 would adequately compensate the plaintiffs for the wrongful relocation of the passageway.
The plaintiff John McNally caused a split rail wooden fence to be placed on both sides of the old farm road in the area where it passed through property owned by him and property owned by Julia Mackin. At its narrowest point, the fenced portion of the old farm road was fifteen feet wide. The existence of this fence did not interfere with the passage of vehicles along the old farm road. The court viewed the old farm road in its entirety, including the section that was bordered by the split rail fence, and did not inspect those other portions of the subject property where Popple Bridge Road and the connecting right of way are located.
In their appeal the defendants assert that the trial court erred (1) in concluding that the plaintiffs established an easement over the claimed roadways; (2) in taking only a partial view of the subject roadways; (3) in awarding damages to the plaintiffs without supporting evidence; and (4) in concluding that the defendants had failed to establish interference by the plaintiffs in the defendants' right of way.
*189 For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. American Brass Co. v. Serra, 104 Conn. 139, 142, 132 A. 565 (1926). The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. Ibid. Any ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee. Gager v. Carlson, 146 Conn. 288, 298, 150 A.2d 302 (1959).
The easement in this case is in general terms without any restrictions as to its use other than that it is to be used in common with others. "Such a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant." Birdsey v. Kosienski, 140 Conn. 403, 413, 101 A.2d 274 (1953). The right of way given to the grantee included all rights of way leading to Route 201 and to Pachaug Pond. The use of the phrase "as the same now exists" with reference to the rights of way was obviously intended to designate the location of the specific rights of way covered by the grant. Peck v. Mackowsky, 85 Conn. 190, 194, 82 A. 199 (1912). Any right of way which was in existence at the time of the grant and which led to Route 201 and Pachaug Pond could be used by the grantee to suit his convenience without limitation. The grantee is not restricted to the use of only one roadway or even the most convenient way. Since it is clear from the evidence that the three rights of way *190 in dispute were in existence at the time of the deed, the grant gave the grantee and his assigns an easement over all of them.
Whether and to what extent a view of the subject matter in dispute is to be taken rests in the sound discretion of the court. O'Connor v. Dory Corporation, 174 Conn. 65, 72, 381 A.2d 559 (1977); LaVoie v. Marshall, 141 Conn. 681, 687, 109 A.2d 508 (1954). The court limited its inspection to those areas where a view would give it a clearer understanding of the issues in dispute. Dickson v. Yale University, 141 Conn. 250, 256, 105 A.2d 463 (1954). There is nothing in the record before us to suggest that in so doing it was being unfair to the parties. Nor does it appear that a more extensive view was reasonably necessary to do justice between them. Greenberg v. Waterbury, 117 Conn. 67, 74, 167 A. 83 (1933).
The trial court concluded that the plaintiffs suffered substantial damages as a result of the defendants' actions and that $2500 represented minimal but fair compensation to the plaintiffs for their losses and infringement of their legal rights. To sustain an award of substantial damages requires a showing of an actual, as opposed to a mere technical injury. Hageman v. Freeburg, 115 Conn. 469, 472, 162 A. 21 (1932); Beattie v. New York, N.H. & H. R. Co., 84 Conn. 555, 559, 80 A. 709 (1911). Unfortunately such showing is lacking in this case. The memorandum of decision, which we examine for further enlightment; Griffith v. Security Ins. Co., 167 Conn. 450, 456, 356 A.2d 94 (1975); discloses that the court was of the view that whatever inconvenience was caused to the plaintiffs by the relocation of the "passageway" was minimal and would be adequately compensated *191 by the damages awarded. Minimal inconvenience is an insufficient springboard for an award of substantial damages. Scoville v. Ronalter, 162 Conn. 67, 76, 291 A.2d 222 (1971). For a violation of their legal rights the plaintiffs are entitled to a judgment vindicating those rights. Dimmock v. New London, 157 Conn. 9, 16, 245 A.2d 569 (1968). Although there are no handy conversion tables with which to monetize personal injury and inconvenience, however substantial, it is self evident that minimal inconvenience can result in only nominal damages.
In their counterclaim the defendants alleged that the plaintiffs interfered with their right of way by erecting a fence, thereby narrowing the roadway. The trial court in finding this issue for the plaintiffs obviously concluded that the defendants had failed to sustain their burden in this respect. We find nothing to indicate that this conclusion should be overturned
There is error in part, the judgment with respect to damages is set aside and the case is remanded with direction to render a judgment for the plaintiffs for $1 damages. The judgment is affirmed in all other respects.