[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Executrix Ann Grimm of the Estate of Thomas A. Faraone (Faraone), brings this action in three counts. The first count claims an easement by necessity over the lands of the defendants Helen Lauterio and Dorothy Waltz, defendants Steven Colgan and Karen Colgan (Lauterio and Colgan) and defendants Pauline Tillinghast and George Deland (Tillinghast). In the second count, the plaintiff claims that she has a right to a prescriptive easement over the lands of all defendants. In the third count, she claims an implied easement over these lands. The defendants Lauterio and Waltz have denied these allegations. The Colgan's have denied the allegations. Tillinghast has filed no pleadings.
The plaintiff seeks an easement over the lands of all the defendants and a permanent injunction requiring the Lauterio defendants to remove boulders and other obstructions placed on the right-of-way and preventing any defendants from blocking the area in the future. She also seeks money damages from the Lauterio defendants for obstructing the right-of-way.
 Facts
The court finds the facts listed below to have been proven. CT Page 10867
1. The subject subdivision was developed by Wa-Wog Camps, Inc. in January of 1921. See Plaintiff's Exhibit 1, the original subdivision map. All lots of plaintiff and all defendants were owned by the common grantor, Wa-Wog Camps, Inc. Id.
2. The plaintiff's property is known as Lot 10 in Block 2 of the aforesaid subdivision and is 50'x 100'. Id.
3. The property owned by defendants Pauline Tillinghast and George Deland is known as Lot 11 in Block 2 and is 50'x 100'.
4. The deeds to both the Faraone property and Tillinghast property state that the grantor conveyed the property "together with a right-of-way over all roads designated on the plan of Wa-Wog Camps, Inc. made by Meade § Taylor, January, 1921, in common with the grantor, its successors and assigns." See Plaintiff's Exhibits 5 and 6. Wa-Wog Camps, Inc. was the common grantor of these properties. Id.
5. In 1939, Isaac Ellis, the grandfather of Pauline Tillinghast and George Deland, cleared the roadway that is the subject of this case. See Testimony of Pauline Tillinghast and George Deland.
6. Thomas Faraone purchased his property in 1941. See Exhibit 5 (Faraone Deed). Mr. Faraone built his original home on the property in the early to mid-1940's.
7. Since 1941, the only road over which a vehicle transporting building supplies could travel is the disputed right-of-way. See Testimony of Louise Tillinghast, Helen Lauterio and Steven Colgan.
8. The disputed right-of-way can be described as follows:
 Beginning near the northwest corner of Lot 1 in Block 3 at an abandoned pump house covered by a wood shed and traveling in a north/northwesterly direction over 16, 15 and 14 on assessor's map no. 250A of the Town of North Stonington, being a roadway running generally parallel to the shores of Billings Lake, approximately 75 feet from said shores and running a distance of approximately 150 feet. Said roadway is approximately 15 feet in width.
CT Page 10868 9. There are no public roads which abut the Faraone property.
10. There are no private roads which abut the Faraone property. The only means of access to the Faraone property is to travel across other private properties.
11. The only means of access to the Faraone property for a vehicle is one the claimed right-of-way.
12. The only generally flat access to the plaintiff's property is across the claimed right-of-way.
13. The Faraone property is a three-bedroom home with heat, gas and a well. Mr. Lawrence Tillinghast testified that he has personally seen delivery trucks deliver items to the Faraone property, including gas trucks delivering new propane tanks, and also the trucks which drilled the Faraone well. All of these trucks have used the claimed right-of-way. Mr. Lawrence Tillinghast also testified that he personally saw Mr. Faraone drive his car across the claimed right-of-way on numerous occasions behind the Tillinghast/Deland home in order to unload supplies. He recalls that Mr. Faraone did this during the 1960's, 1970's and 1980's.
14. There are steps up the hill behind the Faraone property which have existed for only a few years.
15. Mr. Lawrence Tillinghast testified that he drove his 1966 Chevelle on the claimed right-of-way from approximately the mid-1970's through the late 1980's. He further testified that his car is low to the ground. He never had any problems traveling across the right-of-way.
16. Mrs. Pauline Tillinghast testified that she has been able to drive her car across the claimed right-of-way for many years. Mrs. Grimm testified that her son-in-law, Alfred Kant, had driven across the claimed right-of-way in order to get to the Faraone property on numerous occasions beginning in the 1960's when his children were toddlers. The use has continued through the 1990'a. Alfred Kant always parked on the Tillinghast property.
17. Thomas Faraone and his family used the claimed right-of-way during all times of the year. Louise Tillinghast testified that she personally saw Mr. Faraone park his car on the Tillinghast/Deland property, and saw him use his vehicle on the right-of-way on numerous occasions over her lifetime. She was CT Page 10869 born in 1953.
18. There was no testimony that Thomas Faraone or his family and friends ever used the hill behind his property as his access to his property. Indeed, several witnesses testified that he never used the hill behind his home to access his property.
19. Richard Mullenthaler testified that on one occasion, when Mrs. Faraone was ill, he used his Chevy Blazer to pick up Mrs. Faraone at the Faraone home. He used the claimed right-of-way and was able to travel along the claimed right-of-way with his Blazer to the Faraone property. he further testified that the claimed right-of-way has always been wide enough to fit at least one car, and in certain locations, two vehicles.
20. The only way to transport building materials, propane gas, furniture and other large objects to plaintiff's property is across the claimed right-of-way. The claimed roadway that exists on top of the step hill behind the plaintiff's house is a significant distance behind the top of the hill. The hill behind the Faraone home is very steep and wooded. It is not suitable for a right-of-way access and impossible for a motor vehicle.
21. Steven Colgan transported sand onto his property after 1992 by use of both a small and mid-sized pick up truck across the claimed right-of-way to the Colgan property.
22. Thomas Faraone used the right-of-way by vehicle. Thomas Faraone and his family and friends used his property on a consistent basis from the 1940's through 1998, when Mr. Faraone died. Mr. Faraone's wife, Elizabeth Faraone, lived at the Faraone home on Billings Lake every summer. Mrs. Faraone had friends who picked her up at her home and drove on the claimed right-of-way.
23. Mrs. Grimm intends to sell the Faraone property as the Executrix of her brother's estate, and would like to use the claimed right-of-way to move her brother's personal property out of that home.
24. All four properties at issue in this case were originally owned by Wa-Wog Camps, Inc. See Plaintiff's Exhibit 1.
25. Steven Colgan testified that he was aware that the claimed pathway physically existed on his property. He saw this before he bought the property. he further testified that the hill CT Page 10870 behind the Faraone property is steep. He testified that he has no knowledge with regard to the condition of the claimed right-of-way or the use of the claimed right-of-way prior to 1992. He testified that the distance from Indian Trail Road to the plaintiff's property along the right-of-way is approximately one hundred-fifty (150) feet.
 Discussion
A. Easement by Necessity
1. Unity of Title
The court finds that Wa-Wog Camps, Inc. was the common grantor. The subdivision maps (Exhibit 1) prepared by Wa-Wog in 1921, and the deeds in the chain of title of the Faraone and Tillinghast/Deland property, demonstrate that Wa-Wog was the common grantor. An easement by necessity does not require a preexisting use of the right-of-way claimed but is premised on the legal fiction that the dividing grant includes such a right of way if the severance otherwise would create an inaccessible parcel. Collins v. Prentice, 15 Conn. 38 (1842). Accordingly, the plaintiff has established unity of title.
2. Severance Creating an Inaccessible Title
The plaintiff has proven that the common grantor divided the land thereby creating an inaccessible parcel now owned by her. The subdivision map (Exhibit 1) clearly shows the plaintiff's land to be inaccessible except by the right-of-way. The law will impose an easement by necessity over adjoining property when a conveyance serving the original unified parcel creates an inaccessible parcel. The access over adjoining property is "incident to the grant; for without it, [the grantee] cannot derive any benefit from the grant. Collins, supra, at 43.
From the evidence presented, the court concludes that at the time of the severance of the Faraone property the plaintiff had access to Indian Trail Road only by way of the easement. The court completely rejects the defendants' claim that the plaintiff could use the steps up the hill for access to her property. Certainly no vehicle could use the steps. To be of any practical use, the plaintiff needs access to her property by vehicle.
3. Reasonable Necessity
CT Page 10871
The court finds that the evidence presented establishes that the easement is the only reasonable means of access to the plaintiff's property. The only other possible access is up a stairway on a steep hill. All parties acknowledge that these steps cannot be used by a vehicle. Therefore, the only access by vehicle is the easement. The court finds that to use the house, the plaintiff requires access by vehicle over the easement.
The court, therefore, orders that there shall be an easement by necessity as claimed by the plaintiff.
B. Prescription Easement
Since this court has found an easement by necessity as of right by maps and deeds, it cannot consider prescriptive easement which is a claim for adverse use of the land of another.
C. Easement by Implication
The facts as presented also support a finding that the plaintiff has an easement by implication over the right-of-way. The court finds that the original deed from the common grantor to the Faraone's predecessor in title provides that the property is conveyed together with a "right-of-way over all roads designated on plan of Wa-Wog Camps made by Meade Taylor January, 1921 in common with the grantor, its successors and assigns." This language is contained in the Faraone deed and chain of title, and all deeds in the Tillinghast/Deland chain of title. The only means of access to the plaintiff's property to the roads in the subdivision map is across the defendants' property.
Our Appellate Court in Kenny v. Dwyer, 16 Conn. App. 58, 64
(1988), defined the requirements for an implied easement. In that case, the court stated:
 An implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary CT Page 10872 for the use and normal enjoyment of the dominant estate.
Importantly, the Connecticut Supreme Court has stated that:
 We have held on prior occasions that when reference to a map is made in the deed which conveys a lot and that map delineates roadways, even though there is no express easement granted, in certain circumstances `the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands.'
Gerald Park Improvement Assn. v. Bini, 138 Conn. 232, 236
(1951), quoting Whitton v. Clark, 112 Conn. 28, 32 (1930).
In determining whether there is an easement by implication, the court must review the intention of the parties. The common grantor owned all the lots when it subdivided the land in 1921.Hagist v. Washburn, 16 Conn. App. 83, 87 (1988). The plaintiff has shown that the easement is reasonable and necessary for the use and normal enjoyment of the property. Without it, not only cannot the plaintiff use and enjoy the property, also she cannot sell it. In short, the court finds that the language in the plaintiff's deed conveying a right of way across all roads in the subdivision implies that the plaintiff has an easement across all the defendants' properties so as to access Indian Trail Road.
D. Damages for Blocking the Easement
The court agrees with the plaintiff that the blocking of the easement with boulders by the defendants. Lauterio and Waltz has prevented the plaintiff from selling the property. She has also been unable to access the property by motor vehicle since August, 1997. Accordingly, the court will award nominal damages in the amount of $100.00.
Judgment will enter for the plaintiff on the first count, easement by necessity and on the third count, for implied easement. The court, therefore, grants to the plaintiff an easement by necessity and by implication over the disputed right of way. The court also orders a permanent injunction requiring Lauterio and Waltz to remove all obstructions from the roadway and preventing any defendant from blocking it again. Finally, the court awards $100.00 in damages against Lauterio and Waltz.
D. Michael Hurley, Judge Trial Referee CT Page 10873