[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Nicolle Woodruff and Ailing Woodruff, Jr., seek a temporary injunction against the defendants, Ralph Gangitano and Carey Gangitano, restraining them from interfering with a right of way that the plaintiffs own over a portion of the defendants' property. The plaintiffs and the defendants own adjacent homes located off Meadow Wood Road in Greenwich. They both own rear or interior lots which do not have sufficient street frontage. The defendants, however, own a strip of land, approximately 36 feet wide and 134 feet in length, that gives them access to and from Meadow Wood Road.[1] The plaintiffs have a right of way or easement over this same strip of land.
In their complaint, the plaintiffs allege that the defendants have interfered with the plaintiffs' use and enjoyment of their easement by, among other things: refusing to clear the easement of snow, blocking the driveway to the plaintiffs' home, harassing guests and delivery truck drivers who travel or park in the easement area, permitting the growth of certain trees which has caused a hazardous condition, and calling the police to complain about their guests who are walking in the easement CT Page 8229 area.
In their prayer for relief, the plaintiffs seek a temporary injunction permitting them to maintain the trees and shrubbery in the easement area; ordering the defendants to remove snow and ice from the right of way; ordering the defendants to cease intimidating the plaintiffs' guests; allowing the plaintiffs and their guests "to park in the area" provided that there is no interference with the right of the defendants to have access to their home. The plaintiffs also seek an order that the defendants remove two stone pillars constructed in or on the edge of the easement area and a moveable wooden gate located between the pillars, both of which the plaintiffs claim are hazardous.
The defendants denied the material allegations of the complaint and filed several special defenses. Among other things, the defendants allege that the plaintiffs are equitably estopped from complaining about the two stone pillars because they were erected around 1991 by a prior owner of the defendants' property with the knowledge and consent of the plaintiffs. Furthermore, the defendants contend that the plaintiffs are prevented by laches and the expiration of the applicable statute of limitations from claiming that the two stone pillars should be removed. The defendants invoke the doctrine of unclean hands because of the admission by the plaintiffs that they and their guests and deliverymen park in the easement area, rather than use it exclusively for purposes of travel.
The criteria for the issuance of a temporary injunction under General Statutes § 52-471 et seq. has been set forth in a number of cases. The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Griffin Hospital v.Commission on Hospitals Health Care 196 Conn. 451, 457, 493 A.2d 229
(1985). In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v. Occhionero, 239 Conn. 199,207, 681 A.2d 306 (1996).
According to Waterbury Teachers Association v. Freedom of InformationCommission, 230 Conn. 441, 645 A.2d 978 (1994), a four part test exists for the issuance of a temporary injunction. "(1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent a stay; (3) the plaintiff was likely to prevail; and (4) the balance of the equities favored a stay." Id., 446. "In general, a court may, in its discretion, exercise its equitable power to order a temporary CT Page 8230 injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) Moore v. Ganim 233 Conn. 557, 569, n. 25, 660 A.2d 742
(1995).
This case involves the intent of the parties in granting an easement to the plaintiffs' predecessors in title by virtue of a deed from Katherine B. Fuller to Edward V. and Grace Nunes, dated April 12, 1946, and recorded in the Greenwich Land Records in Book 411 at Page 148. This deed of what is now the plaintiffs' property provides in pertinent part that the grantees, and their heirs and assigns, which includes the plaintiffs in this present action, are given the right to use in common with the grantor, her heirs and assigns, the defendants in this case, "a strip of land lying between the easterly boundary line of the above-described premises and a stone wall on other premises of the Grantor as a road or way for all purposes of travel . . ."[2]
The issue is whether the grant of the right-of-way or easement for purposes of travel also includes the right of the plaintiffs to park thereon. "The meaning and effect of the [word travel] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . . The primary rule of interpretation . . . is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met.' (Citation omitted; internal quotations marks omitted.) Wood v. Amer 54 Conn. 601, 604-605, 736 A.2d 162 (1999), aff'd, 253 Conn. 514, 755 A.2d 175 (2000).
Moreover, "[i]t is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import. . . . Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted. . . ." (Citation omitted; internal quotation marks omitted.) D'Addario v. D'Addario,26 Conn. App. 795, 800, 603 A.2d 1199 (1992).
In this present case, the underlying problem is that the plaintiffs do not have a garage on their property and the only parking is on the circular driveway in front of their home which has space for only about CT Page 8231 three motor vehicles. If the plaintiffs have guests, or delivery trucks, and there is insufficient parking in the circle, these other vehicles park on the right-of-way or easement. The plaintiffs, who purchased their property in 1974, have no paved parking area on their property, which consists of approximately 1.3 acres, other than the circular driveway. The defendants, as owners of the servient estate, contend that parking on the right-of-way overburdens or overuses the easement. "The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." (Citations omitted; internal quotation marks omitted.) Karas v. Kope,205 Conn. 332, 341, 533 A.2d 1202 (1987).
In addition to the argument about whether "travel" includes parking, the plaintiff's claim that for years they have maintained a small island or circular garden area of trees and bushes that is in front of their home and in the middle of the right-of-way or easement. The defendants, who moved into their home in the summer of 1999, have insisted that the plaintiffs cease from doing so because the island is on their land. Additionally, the parties have had some problems with snow removal. For a number of years, the plaintiffs' snow plow personnel plowed a portion of the defendants' property in order that motor vehicles backing out of the plaintiffs' driveway had sufficient room to back up, stop, and then go forward out along the right-of-way or easement to Meadow Wood Drive. The two stone pillars on the defendants' property which, as previously noted, were constructed in 1991 by the defendants' predecessor in title, are also a source of controversy. To prevent the plaintiffs from backing up between the pillars, the defendants put up a moveable gate between the two pillars that is within or on the edge of the easement area. The plaintiffs seek an order that the pillars be torn down or, if not, that at least the gate be removed.
Each party cites a case that substantiates, in their opinion, their respective views of whether "travel" can include parking. of course, the plaintiffs agree that the parking of their vehicles on the right-of-way cannot block access to the defendants' property and they claim that this has never occurred. The plaintiffs cite Hagist v. Washburn,16 Conn. App. 83, 546 A.2d 947 (1988), and the defendants cite Hall v.Altomari, 19 Conn. App. 387, 562 A.2d 574 (1989). In Hagist, the court ruled that the owner of the dominant estate could park on the right-of-way owned by the servient estate, and in Hall a year or so later, it was decided that the dominant estate owner could not do so.
As pointed out in Hall v. Altomari, supra, 19 Conn. App. 390, "[f]or a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of CT Page 8232 the parties." Id. In Hagist v. Washburn, supra, 16 Conn. App. 86, the deed referred to using the right of way "by foot or vehicle" and the owner of the servient was found to be blocking the driveway and interfering with the right to use this driveway. In Hall, the deed referred to the right-of-way "to and from said premises to Long Ridge Road over and across the private way." Hall v. Altomari supra,19 Conn. App. 391. "We interpret the phrase "to and from said premises to Long Ridge Road' . . . as words of limitation restricting the defendant's rights with respect to the private road to those of ingress and egress." Id. The court distinguished Hagist by saying that the right-of-way in that case was "granted in general terms." Id. Therefore, one must determine whether a particular grant is in "general terms" or contains "words of limitation." Id. Using the right-of-way in this present case "for all purposes of travel" appears not to be a grant in "general terms," but rather uses words of "limitation" and those words are "travel." Hence, the plaintiffs, their guests, their delivery vehicles do not have the right to park vehicles on the subject easement or right-of-way, and a temporary injunction restraining the defendants from interfering with something to which the plaintiffs are not entitled in the first place should not issue.
Although no evidence was presented at the hearing on the application for a temporary injunction, it does seem possible that the plaintiffs could find some area on their property to pave over for parking. At the full hearing for a permanent injunction, the plaintiffs may be able to present some evidence on this issue but, at least at this stage of the proceedings, a temporary injunction against the defendants is not warranted.
In terms of tending to the flowers and snow plowing of land located within the easement or right-of-way, this property belongs to the defendants and it is their right and prerogative to maintain the area as they see fit. What the defendants cannot do, of course, is prevent the owners of the dominant estate from traveling along the easement and having ingress and egress to and from their home. The moveable wooden gate between the pillars falls into this category for it is located within the confines of the easement area. The defendants can put up a gate on their property, of course, but the gate where it is now located impedes the plaintiffs from backing out of their driveway and using their right-of-way. Therefore, the defendants are ordered to remove the gate from its present location until further order of the court.
A temporary injunction will not issue with respect to any other aspect of the plaintiffs' claims for the reasons stated above, that is, the defendants' conduct is within their rights as the owners of the servient estate. No order with regard to the stone pillars is entered at this time CT Page 8233 because it is more equitable to maintain the status quo until the application of a statute of limitations and/or laches is finally determined.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of June, 2001.
William B. Lewis, Judge